**UNITED STATES of America,**
**Petitioner-Plaintiff,**

v.

**50.34 ACRES OF LAND, more or less, situate in the VILLAGE OF EAST HILLS, County of Nassau, State of NEW YORK, and John William Mackay, Village of East Hills, County of Nassau, the People of the State of New York, unknown owners, Defendants.**

No. 83.

United States District Court
E. D. New York.

Feb. 3, 1953.

See also, 13 F.R.D. 19.

———◆———

Harry T. Dolan, Sp. Asst. to the Atty. Gen., for petitioner-plaintiff.

Herman Goldman, New York City, for defendant John William Mackay by Irving Zion, Benjamin Wiener, Elias Rosenzweig, New York City, of counsel.

INCH, Chief Judge.

This is a condemnation proceeding by the United States of America against 50.-34 acres of land, more or less, situate in the Village of East Hills, County of Nassau, State of New York, and John William Mackay and others. The proceeding was instituted on November 14, 1951, and title was vested in the government by the filing of a Declaration of Taking on December 12, 1951, as of which date the values involved herein must be fixed.

The only questions to be determined in this proceeding are (1) the fair market value of the 50.34 acres of land taken, and (2) the amount of the so-called "severance damage" suffered by the 378 acres remaining to John William Mackay as a result of the taking of 50.-34 acres from the original tract owned by him consisting of approximately 428.34 acres.

Having inspected the property and considered all the evidence presented at the trial, as well as the able briefs sub-

mitted by counsel, I make the following findings of fact:

1. The damage parcel comprises 50.34 acres of land in the Village of East Hills, Nassau County, New York and prior to the taking was part of a larger tract owned by John William Mackay comprising approximately 428.34 acres.

2. The land was condemned by the government "to provide for military facilities for the United States Air Force and for other military purposes * * for use in connection with the establishment of an Air Force project in the Village of East Hills, County of Nassau, New York, and for such other uses as may be authorized by Congress or by Executive Order."

3. The condemned land had been leased by the government since about 1942, and during 1942 and 1943 the government built most of the buildings and structures which were located on the land at the time of the taking.

4. Since the taking, the installation has been used by the Air Defense Command of the Air Force as an "Air Defense Control Center" from which interceptor aircraft stationed at various airfields are controlled and directed in the interception of potentially hostile or unindentified aircraft.

5. The parcel taken is located generally in the southeastern part of the Mackay land and fronts on Harbor Hill Road, also known as Red Ground Road, for a distance of about 1781 feet.

6. The property is surrounded by an 8-foot wire fence, and there are two radio towers located on the property.

7. Approximately 5% of the parcel taken is occupied by buildings and structures erected by the government and the remaining 95% is vacant.

8. Less than 500 members of the Armed Forces work on the reservation and approximately 250 to 300 live there.

9. The activities carried on at this installation are of a highly technical nature, and 80% of the personnel stationed there are technicians.

10. Approximately 200 to 250 vehicles go in and out of the reservation daily.

11. The damage parcel, like the remaining Mackay land, is located in two zoning areas. The easterly part of the condemned parcel, comprising 26.14 acres, lies in an area zoned for residential use, where the minimum plot area for a home is 15,000 square feet. The westerly portion of the taken area, comprising 24.20 acres, lies in a residential zone, where the minimum plot area for a home is one acre.

12. These residential zoning areas run northerly through all the remaining Mackay land, except for approximately 50 acres in the northwest portion which are zoned for light industrial use.

13. With the exception of the industrial zone, the highest and best use to which the appropriated and remaining Mackay land could be put is for "fairly high-class residential development".

14. The contour of the westerly half of the parcel taken rises from an elevation of approximately 195 feet on Harbor Hill Road to a plateau in the northly part where the elevation is approximately 320 feet. The contour of the easterly half of the parcel is more level and rises from approximately 195 feet on Harbor Hill Road to an elevation of 210 feet at the northeast corner of the parcel and to an elevation of approximately 260 feet in the center of the northern boundary of the parcel.

15. The topography of the remaining Mackay land to the north, northwest and west of the condemned parcel is generally rugged and heavily wooded. The Mackay land to the northeast and east of the condemned parcel has been cleared and is fairly level, and it appears to have been used as farmland.

16. The buildings constructed by the government on the condemned parcel are located mainly in the southeast corner of the property almost entirely below or south of the rise in elevation referred to above, so that they are effectively screened from view from the remaining

Mackay land to the north and west. However, the government buildings and structures, including a central heating plant and some coal piles, are plainly visible from the remaining Mackay land to the east of the reservation.

17. In the past three years there has been a continuous and substantial increase of land values in the area of East Hills.

18. The fair and reasonable value of the 50.34 acres taken is as follows:

26.14 acres (zoned 15,000 sq. ft.) at $5,000 ................$130,700
24.20 acres (zoned 1 acre) at $3,000 ..................... 72,600

Total........$203,300

19. The consequential or severance damage to the remaining Mackay land is as follows:

24 acres (zoned 15,000 sq. ft.) at $5,000 ............$120,000
Above 24 acres damaged to the extent of 30% of their
    fee value.......................................$ 36,000
22 acres (zoned 1 acre) at $3,000 per acre ..........$ 66,000
Above 22 acres damaged to the extent of 15% of their
    fee value ...........................................$ 9,900

Total severance damage ......$ 45,900

20. The total compensation to which defendant John William Mackay is entitled is $249,200 as follows:

Value of 50.34 acres taken ...........................$203,300
Severance damage to remaining 378 acres .............. 45,900

Total ........$249,200

The basis for the above findings does not require extensive discussion. With reference to the 50.34 acres taken, the list of 19 comparable sales introduced by the government (Plaintiff's Exhibit 9) indicates that land zoned for 15,000 square feet sold generally in the area for approximately $5,000 per acre and that land zoned for 1 acre sold generally in the area for approximately $3,000 per acre. While it is true that many of these parcels were not as rough or as wooded as the condemned parcel, and consequently for residential development required less development costs, it must be noted that the bulk of these sales took place in 1949 and 1950 from one to two years prior to the date of taking of the condemned parcel. The government's expert Myers E. Baker agreed that there has been a "continuous" and "substan-

tial" increase in land values in the vicinity of East Hills for the past three years, and the defendant properly points out that in some instances the increase in land values in this area was in excess of 50% in less than a one-year period. In my judgment the government appraiser has not given sufficient weight to this marked upward trend in values in the area, and I accordingly find, upon all the evidence, that the fair and reasonable value of the 50.34 acres taken on December 12, 1951 was $3,000 per acre for land zoned 1 acre, and $5,000 per acre for land zoned 15,000 square feet.

The problem of evaluating the consequential or severance damage is more difficult. The government takes the position that the only remaining Mackay property which could possibly be diminished or adversely affected in market

value by the presence of the military installation is the Mackay land immediately surrounding the condemned parcel to a depth of 1 lot, and that within this single tier of lots the depreciation in market value is 15%. After inspecting the condemned parcel and the remaining Mackay land, and giving particular attention to the land immediately adjacent to the boundaries of the military reservation, I am of the opinion that the government's appraisal of the severance damage is too conservative. It is true that the remaining Mackay land to the west and northwest of the condemned parcel is not seriously affected by the presence of the military reservation, mainly by reason of the fact that the government buildings are located in the southeasterly portion of the reservation and are screened from view by the contour of the land. However, I am of the opinion that the presence of the military reservation with its 8-foot wire fence does affect the value of the immediately adjoining Mackay land on the west and northwest boundary to a depth of approximately two lots. Accordingly, I find that the remaining Mackay land in the 1 acre zone to the north and northwest of the condemned parcel is affected to a depth of 2 lots or 436 feet, and that this area comprising 22 acres is damaged to the extent of 15% of its market value.

The situation is somewhat different as to the remaining Mackay land in the 15,000 sq. ft. zone to the northeast and east of the condemned parcel. The Mackay land in this area is much more seriously affected by the presence of the military installation. The least attractive side of the military post is in plain view from the Mackay land to the east of the reservation. Defendant's witness Mezger who built and sold the Norgate development across Harbor Hill Road on the south side of the reservation was of the opinion that the area within the first 500 feet of the boundary of the condemned parcel in the 15,000 sq. ft. zone, comprising 29.4 acres, depreciated between 55% and 60% of its value, and that the next 250 feet out from the boundary, comprising 18.1 acres, depreciated 30% of its value. While I do not wholly agree with that opinion, after a careful consideration of the testimony of all the experts who testified upon the trial, and based upon my inspection of the property, it is my conclusion that the remaining Mackay land in the 15,000 sq. ft. zone to the northeast and east of the condemned parcel is affected to a depth of 3 lots or 411 feet and that this area comprising 24 acres is damaged to the extent of 30% of its market value.

Settle order.